IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

IN RE:

ELITE ENDEAVORS, LLC,

      Debtor.

)
)
)
)
)
)
)

Chapter 11

Case No. 24-20222-RDB

## FIRST RATE TRADING, LLC'S OBJECTION TO MOTION FOR APPOINTMENT OF WILL B. WOHLFORD AND MORRIS LAING LAW FIRM AS ATTORNEYS FOR DEBTOR AND DEBTOR-IN-POSSESSION

First Rate Trading, LLC ("FRT"), creditor of Debtor Elite Endeavors, LLC, objects to *Debtor's Motion to Employ Will B. Wohlford and Morris Laing Law Firm as Attorneys for Debtor and Debtor-In-Possession* (Doc. 266) ("Motion") and states as follows:

### INTRODUCTION

Debtor's Motion is an attempt to cure the defects of its previously filed *Motion to Employ Will B. Wohlford and the Morris Laing Law Firm as Special Counsel* ("First Motion"). However, in doing so, Debtor has disclosed facts demonstrating that Mr. Wohlford and his firm (collectively, "Firm") are disqualified from employment. The Firm holds an interest materially adverse to the bankruptcy estate and is not disinterested. Under the proposed compensation arrangement, the Firm will be paid by Debtor's managing member who is its sole owner and a substantial creditor, Flying 4T Enterprises, LLC ("Flying 4T"). Doc. 266 at 2; *see also* Doc. 52 at 9-10. Flying 4T is owned by Debtor's principals, Dusty Turner and Amy Turner, who Debtor disclosed as insiders it made payments to on its Statement of Financial Affairs without disclosing the amount of such payments, however, since then, neither the U.S. Trustee nor the Debtor has investigated those payments, and the time to file a claim against Mr. and Mrs. Turner is running out, with less than 45 days left to make any such claims. Doc. 52 at 9-10; 11 U.S.C. § 546(a). Moreover, Mr. and

1

Mrs. Turner are co-debtors with the Debtor guarantying approximately $500,000.00 in claims against the estate; Mrs. Turner is also a creditor. Doc. 45; Doc. 43 at 4, 9.

Flying 4T has already paid the Firm a $25,000.00 retainer. Doc. 266 at 2. Flying 4T also will continue to pay the Firm's fees under a guaranty-type arrangement. Doc. 266 at 2. By accepting a retainer from and continuing to be paid by Debtor's principal, a creditor with insider co-debtor owners that the **estate has unexplored potential claims against**, the Firm fails to meet the requirements of 11 U.S.C. § 327(a). This ongoing compensation arrangement creates a significant risk of a conflict of interest, if not an actual conflict, and would raise serious questions regarding the administration of this case if permitted. The Motion should be denied on this basis alone.

Moreover, in apparent recognition that the Firm is not qualified for employment as special counsel, Debtor has abandoned its contention that employment is proper under 11 U.S.C. § 327(e) in the First Motion. *See* Doc. 243 at 1; Doc. 266 at 1. Debtor's revised Motion is a clear attempt to employ the Firm as special counsel, while simultaneously avoiding the requirements imposed by the Bankruptcy Code to employ special counsel. *See Id*. Debtor's Motion lists services that are duplicative of the services that Debtor's current counsel Mrs. Krigel and her firm Krigel Nugent + Moore, P.C. are employed to perform. To the extent that the Debtor's Motion is actually a genuine attempt to employ the Firm to perform identical services as Debtor's existing counsel, the employment of the Firm is unnecessary. Because Debtor's Motion is really an attempt to employ the Firm as special counsel, FRT addresses that purpose specifically.

As in its First Motion, Debtor again fails to provide any specific facts demonstrating that the purported claims it desires to bring have any merit or potential value. Despite opposition to the First Motion from FRT arguing the claims were meritless and stating the facts FRT anticipates

2

Debtor will allege, Debtor offered no specific facts relating to the merits of its purported claims. If FRT had specific facts to refute FRT's contention that Debtor's purported claims are meritless, it would have set them forth in the Motion in compliance with Fed. R. Bankr. P. 2014. Debtor does not, so it did not. *See* Doc. 266.

The Motion should be denied. *First*, the Firm holds an interest materially adverse to the estate and does not meet the disinterestedness requirement because a creditor owned by insider co-debtors that the **estate has unexplored potential claims against**, paid it a $25,000.00 retainer and will pay it on an on-going basis, creating a serious risk of a conflict of interest, if not an outright actual conflict. *Second*, Debtor, again, has failed to meet its burden to demonstrate the employment is necessary and beneficial to the bankruptcy estate because (a) the services the Debtor proposes to employ the Firm to perform are identical to Debtor's existing counsel, (b) Debtor has failed to state specific facts allowing the Court to evaluate the merits and potential value, or lack thereof, of the claims the Firm is being employed to bring, and (c) based on the, now unrefuted, anticipated factual basis of the purported claims, they are meritless.

**BACKGROUND**

On March 6, 2024, Debtor filed its petition for Chapter 11 bankruptcy. Doc 1. Debtor's principal and Chief Executive Officer is Dusty Turner, who manages and runs the Debtor's business along with his wife, Amy Turner. Debtor is wholly owned by Flying 4T. In turn, Flying 4T is owned 50-50 by Dusty Turner and Amy Turner. Doc. 52 at 9-10. In connection with Debtor's petition for Chapter 11 bankruptcy it disclosed its list of creditors holding the 20 largest unsecured claims. Doc. 1 at 6-8. The list of 20 largest unsecured creditors of the Debtor includes Flying 4T with an undisputed claim of $215,218.64 and Amy Turner with an undisputed claim of $18,440.45, along with claims personally guaranteed by Mr. Turner and/or Mrs. Turner from FNBO in the

3

amount of $104,973.51, and The Scoular Company in the amount of $419,051.17. *Id*. In addition, Debtor disclosed in its Statement of Financial Affairs that it made payments to insiders, Mr. and Mrs. Turner, but did not disclose the amount of those payments. Doc. 52 at 9-10. Since the disclosure of those insider payments, the U.S. Trustee and Debtor have not investigated those payments or potential claims against Mr. and Mrs. Turner.

On or about September 16, 2025, the Debtor filed its First Motion in which Debtor asked this Court to approve the retention of the Firm as special counsel for Debtor to pursue purported claims for restitution and unjust enrichment, tortious interference with relationship or expectancy, and for declaratory judgment against 1502 East Walnut NB, LLC, 1502 East Walnut CB, LLC (collectively, the "1502 Entities") and Nathan Broders. Doc. 244 at 2-3. On October 7, 2025, FRT timely filed *First Rate Trading, LLC's Objection to Motion to Employ Will B. Wohlford and Morris Laing Law Firm as Special Counsel for Debtor* objecting to the First Motion. Doc. 251. On October 20, 2025, Debtor, by agreement with FRT, filed its *Motion to Continue Non-Evidentiary Hearing on Debtor's Application to Employ Will B. Wohlford and His Firm Morris Laing Law Firm as Special Counsel for Debtor* ("Motion to Continue") requesting a continuance of the hearing on the First Motion because among other reasons Debtor "desire[d] to file a response to FRT's objection." Doc. 252 at 1. The Motion to Continue was granted and a hearing set for December 18, 2025, and subsequently continued by order of the Court to January 22, 2026. Docs. 254, 262. The Court set a deadline for the Debtor to file an Amended Application to Employ the Firm for January 3, 2026, and stated that opposing counsel would have 15 days to respond. Doc. 262. On January 7, 2026, Debtor filed the Motion **out of time**. Doc. 266.

In the First Motion, Debtor asserted that the employment of the Firm as special counsel to the Debtor is authorized under 11 U.S.C. § 327(a) and § 327(e). Doc. 244 at 2. In an obvious

4

attempt to avoid the requirements for employment as special counsel under 11 U.S.C. § 327(e) – which the Firm cannot satisfy as set forth in the Objection to the First Motion– Debtor no longer asserts that employment of the Firm is authorized under 11 U.S.C. § 327(e) as special counsel to pursue claims against the 1502 Entities and Nathan Broders. Instead, Debtor seeks an order appointing the Firm under 11 U.S.C. § 327(a) purportedly to represent the Debtor in this matter generally. Doc. 266 at 1-2. However, Debtor is already represented by competent counsel in this matter who has ample resources to adequately represent the Debtor. *See* Doc. 9 at 2-3. In fact, the legal services that Mr. Wohlford and the Firm are requested to perform are virtually identical to those of Debtor's current counsel with the notable exception of pursuing claims against the 1502 Entities and Nathan Broders for restitution and unjust enrichment, tortious interference with relationship or expectancy and for declaratory judgment. *Compare* Doc. 9 at 1-2 *with* Doc. 266 at 1-2. In support of the Motion, Debtor offers the Affidavit of Will B. Wohlford ("Affidavit"). Doc. 266 at 4.

The 1502 Entities filed proofs of claim related to the lease of an approximately 50,000 square foot manufacturing facility in Lexington, Nebraska, claiming to be entitled to over $400,000 of past due rent from the Debtor. *See Proofs of Claim* 13 and 14. The 1502 Entities obtained their interest in the lease of the property by purchasing it from the Dawson County Area Economic Development Council in or about November 2023. *Id.* In or about September 2025, the 1502 Entities sold the property subject to the lease to Livestock Nutrition Center, LLC ("LNC"). Doc. 249 at 1. In connection with the sale, the 1502 Entities assigned their interest in the lease to LNC. Doc. 249 at 1. Debtor appears to take issue with the sale of the property and its new landlord, LNC.

Notably, Debtor never scheduled this purported claim and failed to note any such claim at

the First Meeting of Creditors. *See* Doc. 41, p. 5, Part 11, 74, 75 (failing to list alleged cause of action); Doc. 47 (Declaration Under Penalty of Perjury for Non-Individual Debtors, signed by Don Dustin Turner).

<u>**ARGUMENT**</u>

The Motion should be denied. *First*, the Firm holds an interest materially adverse to the estate and does not meet the disinterestedness requirement because a creditor owned by co-debtors, who the estate has unexplored potential claims against, paid it a $25,000.00 retainer and will pay it on an on-going basis, creating a serious risk of a conflict of interest, if not an outright actual conflict. *Second*, Debtor, again, has failed to meet its burden to demonstrate the employment is necessary and beneficial to the bankruptcy estate because (a) the services the Debtor proposes to employ the Firm to perform are identical to Debtor's existing counsel, (b) Debtor has failed to state specific facts allowing the Court to evaluate the merits and potential value, or lack thereof, of the claims the Firm is being employed to bring, and (c) based on the anticipated factual basis of the purported claims, they are meritless.

**I.      The Firm cannot be employed because it holds an interest materially adverse to the estate and does not meet the disinterested person requirement because it has received a $25,000 retainer from a substantial creditor and will be paid on an on-going basis a substantial creditor.**

Mr. Wohlford and his Firm cannot be employed by the Debtor because they hold an interest adverse to the estate and are not "disinterested persons" as required by 11 U.S.C. § 327(a). A disqualifying conflict of interest, or at least a significant risk of one, exists because Flying 4T, a creditor of the Debtor, is paying the Firm's compensation. Flying 4T is owned by Mr. and Mrs. Turner (a creditor), who have personally guaranteed substantial debts of the Debtor, which the estate possess unexplored potential claims against. This arrangement creates a

6

significant risk of divided loyalty, as the Firm's financial interests are tied to the Debtor's principals, guarantors, and potentially adverse parties – not the bankruptcy estate. The on-going nature of this compensation structure presents a substantial risk that the Firm will prioritize the interests of its paymasters over those of the estate, particularly when their interests diverge. Such a conflict, or at a minimum, the clear appearance of impropriety, undermines the integrity of the bankruptcy process and would raise doubts regarding the administration of this case if permitted. Those doubts and questions should be avoided with great care.

Debtor seeks to employ the Firm pursuant to 11 U.S.C. § 327(a), which states in pertinent part:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, ... or other professional persons, that do not **hold or represent an interest adverse to the estate**, and that are **disinterested persons**, to represent or assist the trustee in carrying out the trustee's duties under this title.

(emphasis added). The Tenth Circuit Court of Appeals adopted a two-part definition of the phrase to "hold or represent an interest adverse to the estate," which is:

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under the circumstances that render such a bias against the estate.

*In re Cook*, 223 B.R. 782, 789 (B.A.P. 10th Cir. 1998) (*quoting In re Roberts*, 46 B.R. 815 (Bankr. D. Utah 1985), *aff'd in part and rev'd in part on other grounds*, 75 B.R. 402 (D. Utah 1987) (en banc)).

The term "disinterested person" is defined under the Bankruptcy Code in pertinent part as a person who "does not have an interest materially adverse to the interest of the estate or of any class

7

of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14)(C). The Tenth Circuit Court of appeals has concluded that "the disinterestedness requirement excludes any attorney 'with some interest or relationship that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules.'" *In re Samys OC, LLC*, No. 24-11166, 2025 WL 791442 at \*13 (Bankr. D. Kan. Mar. 11, 2025) (*quoting In re Cook,* 223 B.R. at 789).

The Tenth Circuit Court of Appeals has recognized that "'[a]n attorney representing a debtor should not receive payment, either directly or indirectly, from any of the creditors.'" *In re Paige*, 685 F.3d 1160, 1180 (10th Cir. 2012) (*quoting In re Huntmar Beaumeade I Ltd. P'ship*, 127 B.R. 363, 365 (Bankr. E.D. Va. 1991)). Indeed, courts have repeatedly denied applications for employment or compensation where it was revealed that the debtor's attorney received pre-petition or post-petition retainer payments from creditors. *In re S. Station, LLC*, 464 B.R. 46, 55-56 (Bankr. D. Utah 2011) (finding that receiving a direct payment from a creditor or owner of the debtor neutralizes the disinterestedness requirement); *In re Huntmar Beaumeade I Ltd. P'ship*, 127 B.R. at 365 (stating the professional, "by receiving payment of its fees from a creditor of the debtors, is not 'disinterested' as that term is used in Section 327(a)[.]") (*citing In re Crimson Investments, N.V.*, 109 B.R. 397, 402 (Bankr. D. Ariz. 1989) (holding proposed counsel to the debtor is not disinterested where it received prepetition and postpetition retainer payments from unsecured creditors of the debtor); *In re Glenn Electric Sales Corp.*, 99 B.R. 596, 602 (D.N.J. 1988) (debtor's counsel's employment terminated because legal fees were indirectly provided by a party affiliated with debtor's largest creditor); *In re WPMK*, 42 B.R. 157, 163 (Bankr. D. Haw. 1984) (a conflict of interest is presented where an attorney representing a debtor received compensation from a

8

corporation that was controlled by an individual who was an owner of a creditor of the debtor)). Actual impropriety is unnecessary for a professional to be deemed not disinterested under 11 U.S.C. § 327(a), rather the mere appearance of a conflict of interest or impropriety is sufficient for such a finding. *In re Rabex Amuru of N. Carolina, Inc.*, 198 B.R. 892, 896 (Bankr. M.D.N.C. 1996).

In *In re S. Station, LLC*, the court found that the foregoing standards of disinterestedness were not met where a debtor's principal, who was also a creditor of the debtor, in a chapter 11 bankruptcy paid the debtor's attorney a prepetition retainer of $20,000.00 and a $37,000.00 pre-chapter 7 conversion retainer. 464 B.R. at 55. The court concluded that "[r]eceiving direct payment from the equity owners, a creditor, or even the principals of a creditor at the outset of the case or after conversion neutralizes the disinterestedness requirements mandated by the Code." *Id.* at 56. "Where a creditor pays the legal fees of the debtor's attorney, the possibility that the attorney's loyalty may be divided is so significant that he cannot continue such representation."

Here, the Firm is not disinterested because it received a $25,000.00 retainer from Flying 4T, the Debtor's sole owner and a substantial creditor with an undisputed unsecured claim of approximately $215,000.00. Doc. 266 at 2; Doc. 52 at 9; Doc. 48 at 2; Doc. 43 at 4. Accepting a retainer from a substantial creditor renders counsel not disinterested. *See In re Rabex Amuru*, 198 B.R. at 895 (finding a law firm was not disinterested where it accepted a retainer from a creditor with a similar-sized claim, $277,473.00). This payment from Flying 4T creates a financial relationship that, at a minimum, creates the appearance of a conflict of interest, which is sufficient to disqualify counsel under § 327(a). *Id.* at 896.

Moreover, Flying 4T's owners are co-debtors who have personally guaranteed approximately $500,000.00 of the Debtor's debts to FNBO and The Scoular Company. Doc. 45; Doc. 43 at 4, 9.

9

This gives Flying 4T-the Firm's paymaster a direct interest in ensuring those two creditors are treated more favorably than others. Debtor disclosed it made payments to Mr. and Mrs. Turner, who are insiders, without disclosing the amount of such payments. Doc. 52 at 9-10. Since then, neither the U.S. Trustee nor the Debtor has investigated those payments, and the time to file a claim against Mr. and Mrs. Turner is running out, with less than 45 days left to make any such claims. *See* 11 U.S.C. § 546(a). This web of interlocking interests creates an unacceptable risk that the Firm's loyalty will be divided **and that valid claims against Flying 4T and its principals will not be pursued**. This is precisely the type of conflict of interest that disqualifies counsel from representing a debtor.

FRT anticipates that Debtor will argue that the taint from Flying 4T paying the Firm's $25,000.00 retainer has been cleansed because Debtor retroactively treated the payment as an investment in capital rather than a loan. In *In re S. Station, LLC,* the court, in a foot note, suggested that:

> [t]here may be some situations where accepting fees directly from an equity owner or creditor for representing a business entity in chapter 11 would be acceptable, ***but these would be very rare***…. One possible method of avoiding this predicament would be to allow the principals to make a well-documented loan or equity contribution to the proposed chapter 11 debtor with full disclosure of the terms and conditions of such arrangement filed with the petition. That was not done in this case.

464 B.R. at 56 n. 24 (emphasis added). This case does not present circumstances where accepting fees from an equity owner or creditor is acceptable, not only because of the clear risk that the Firm's loyalty will be divided but because of the on-going guaranty type arrangement proposed by the Debtor. In the Motion, Debtor stated that "[o]nce that retainer is exhausted, [Flying 4T] has agreed to provide the funds necessary to pay Mr. Wohlford and his firm's hourly fees and expenses." Doc. 266 at 2.

10

In *In re Rabex Amuru*, the court found that a law firm was not disinterested where it accepted a retainer in the amount of $20,800.00 from a creditor, but also stated in its disclosure of compensation that it "'expects that additional funds will be deposited into its's [*sic*] trust account to cover [the law firm's] fees and expenses rendered during the course of the chapter 11 case.'" 198 B.R. at 896. The court reasoned that "[t]he acceptance of a guaranty from a creditor is a factor which strongly indicates the appearance of a conflict of interest *if not an outright conflict*." *Id.* at 896 (emphasis added) *citing In re Senior G & A Operating Co.*, 97 B.R. 307, 311 (Bankr. W.D. La. 1989) ("The guaranty of the fees of attorneys for the Debtor may raise a question as to whom the attorneys are actually representing.").

That is the situation here. The proposed compensation arrangement is an on-going guaranty type arrangement by Flying 4T, a substantial creditor, which strongly indicates the appearance of a conflict of interest if not an outright conflict. The arrangement raises questions as to whom the Firm is actually representing, the bankruptcy estate or the interests of Flying 4T and by extension Mr. and Mrs. Turner individually, who the estate has unexplored potential claims against. The risk of such impropriety is unacceptable and will create unnecessary doubts as to the administration of this case, and integrity of the bankruptcy system, which should be avoided.

The Firm should not be employed by the Debtor because they hold an interest adverse to the estate and are not "disinterested persons" as required by 11 U.S.C. § 327(a). A disqualifying conflict of interest, or at least a significant risk of one, exists because Flying 4T, a creditor of the Debtor and who is owned by insider co-debtors with unexplored potential claims against them, is paying the Firm's compensation. Additionally, the arrangement is inappropriate because of the on-going guaranty type nature of the arrangement. Thus, the Motion should be denied.

11

**II.     The Firm Cannot Be Employed Because the Debtor Has Failed to Meet Its Burden to State Specific Facts Showing the Need for the Employment.**

The Firm cannot be retained under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014 because Debtor has failed to meet its burden to demonstrate, by specific facts, that the employment of the Firm is necessary to or beneficial for the estate. *First*, the Debtor proposes to employ Mr. Wohlford and his Firm to perform services duplicative of those performed by Debtor's current counsel, Mrs. Krigel and Krigel Nugent + Moore, P.C.. *Second,* the Debtor fails, yet again, to disclose sufficient information to allow the Court to appropriately exercise its discretion by evaluating the factual basis of the claims, the merits of the claims, the potential benefits resulting from the claims, and the projected costs to bring the claims. *Third*, Debtor's claims are meritless and, thus, will serve only to reduce the value of the estate without providing any benefit to the estate.

It "is clearly not the function of a court to blindly appoint counsel first, upon request, and then ask questions or cut compensation later…. It is never *presumed* that a request for counsel is justified." *In re Kearney*, 609 B.R. at 387 *quoting In re Rheam of Indiana, Inc.,* 111 B.R. 87 (Bankr. E.D. Pa. 1990)*, aff'd in part, vacated in part,* 133 B.R. 325 (E.D. Pa. 1991). The Court has broad discretion regarding the employment of professionals to work on behalf of the estate. *In re Harold & Williams Dev. Co.*, 977 F.2d 906, 909 (4th Cir. 1992). The burden is on the debtor to come forward with specific facts demonstrating the need for the employment. *In re Bechuck*, 472 B.R. 371, 375 (Bankr. S.D. Tex. 2012) (internal citations omitted); *see also* Fed. R. Bankr. P. 2014.

"When ruling on an employment application under § 327(a), the Court must decide "whether it is reasonably necessary during the administration of the estate' to employ the proposed professional person." *In re Kearney*, 609 B.R. at 386 *quoting* 3 Collier on Bankruptcy ¶ 327.02[1] (16th ed.) (internal citations omitted). In order for employment of an attorney to be "reasonably

12

necessary," the employment must benefit the bankruptcy estate. *Id.* at 386-387. To determine whether the employment to pursue claims benefits the bankruptcy estate, the Court should evaluate the merits of the claims and their value.

A. *It is Unnecessary for Debtor to Employ Mr. Wohlford and his Firm Because the Proposed Employment is for Services that are Duplicative of Mrs. Krigel and Krigel Nugent + Moore, P.C..*

The Debtor in its Motion proposes to employ the Firm as counsel in addition to its current counsel Mrs. Krigel and her firm. The Motion reveals that Debtor proposes to employ the Firm to perform identical services as those being performed by Debtor's existing counsel. Therefore, the services are duplicative and the employment of Mr. Wohlford and his Firm is unnecessary.

In *In re Wang Laboratories, Inc.*, the court denied an application to employ a financial consultant because "the retention and employment of [the financial consultant] is not necessary for the estate because most, if not all, of [the financial consultant's] proposed services are duplicative of the services to be performed by either" the debtor-in-possessions current counsel or its accountants. 143 B.R. 794, 795 (Bankr. D. Mass. 1992). That is the situation here.

In FRT's Objection to the First Motion, FRT argued that employment of the Firm would be inappropriate under 11 U.S.C. § 327(e) as special counsel. Doc. 251 at 4-5. In addition, FRT pointed out that employment of the Firm would be inappropriate under 11 U.S.C. § 327(a) as well because Debtor did not demonstrate that the employment would assist the Debtor in carrying out its duties as the debtor-in-possession. *Id.* at 5-6. The Debtor, in apparent recognition and acceptance of the validity of FRT's arguments, now seeks to hire the Firm only under 11 U.S.C. § 327(a) and provided a list of services the Firm will perform related to the Debtor's duties as debtor-in-possession, fiduciary of the bankruptcy estate. *See* Doc 266 at 1-2; 11 U.S.C. § 1107(a) (a debtor-in-possession has the same duties as a trustee except for the duties specified in 11 U.S.C. §

13

1106(a)(2)-(4)). The proposed list of services to be performed by Mr. Wohlford and his Firm are the same as those that Debtor's existing counsel provide. *Compare* Doc. 9 at 1-2 *with* Doc. 266 at 1-2.

More specifically, Debtor proposes to employ Mr. Wohlford and the Firm to perform the following services:

    a. Attend meetings (in-person and by phone, zoom, Webex) and negotiate with representatives of creditors and other parties in interest;

    b. Take necessary actions to protect and preserve the estate, including the prosecution of actions on its behalf, the defense of any actions commenced against the Debtor's estate, and objections to claims filed against the estate;

    c. Prepare on behalf of Debtor petitions, complaints, motions, applications, answers, orders, reports and papers necessary to the administration for the estate, including, but not limited to claims against 1502 East Walnut NB, LLC, 1502 East Walnut CB, LLC and Nathan Broders, and potentially others, for restitution and unjust enrichment, tortious interference with relationship or expectancy and for declaratory judgment;

    d. Negotiation and prosecute on the Debtor's behalf contracts for the sale of assets, plan of reorganization, and related agreements and/or documents, take any action that is necessary for the Debtor to obtain confirmation of its Plan of Reorganization (counsel will not provide duplicate services of those performed by Erlene Krigel and her firm Krigel Nugent + Moore, PC);

    e. Appear before this Court; and protect the interests of the Debtor's estate before the Court and the U.S. Trustee;

    f. Perform other necessary legal services and provide other necessary legal advice to the Debtor in connection with this Chapter 11 proceeding.

Doc. 266 at 2. Mrs. Krigel and her firm Krigel Nugent + Moore, PC are employed to perform the following services:

    b. Attend meetings and negotiate with representatives of creditors and other parties in interest;

    c. Take all necessary action to protect and preserve the estate, including the prosecution of actions on its behalf, the defense of any actions commenced against the Debtor's estate, and objections to claims filed against the estate;

    d. Prepare on behalf of Debtor all motions, applications, answers, orders, reports and papers necessary to the administration for the estate;

    e. Negotiation and prosecute on the Debtor's behalf all contracts for the sale of assets, plan of reorganization, and all related agreements and/or documents, take any action that is necessary for the Debtor to obtain confirmation of its Plan of Reorganization;

    f. Appear before this Court and the United States Trustee; and protect the interests of the Debtor's estate before the Court and the U.S. Trustee; and

g. Perform all other necessary legal services and provide all other necessary legal advice to the Debtor in connection with this Chapter 11 proceeding.

Doc. 9 at 2. The services that Mr. Wohlford and the Firm propose to perform are identical to services Mrs. Krigel has already been retained to perform, and thus, are duplicative.

The Debtor already has competent counsel to perform the services it proposes to employ Mr. Wohlford and his Firm to perform in the Motion, so there is no need to employ Mr. Wohlford and his Firm. Moreover, it is the Debtor's burden to come forward with specific facts showing the need for the employment, and the Debtor has failed to offer any specific facts showing the need for the employment. The Motion should be denied.

**B.** ***Debtor's Motion should be denied because it, yet again, fails to provide specific facts required in an application for employment that are necessary for the Court to exercise its discretion.***

The Motion is an obvious attempt to employ Mr. Wohlford and his Firm for a special purpose, to pursue purported claims against the 1502 Entities, Nathan Broders, and others. For that reason, FRT will address the deficiencies of the Motion with respect to those proposed services more specifically. The Debtor fails, yet again, to disclose specific facts sufficient to allow the Court to appropriately exercise its discretion by evaluating the factual basis of the claims, the merits of the claims, the potential benefits resulting from the claims, and the projected costs to bring the claims.

Fed. R. Bankr. P. 2014(a) requires that an application for employment state specific facts that demonstrate the need for the employment and reasons for selecting the professional over others, so the court can exercise its discretion by using the specific facts in the application to determine "whether the proposed professional will maximize value for the estate." *In re Bechuck*, 472 B.R. at 375. The "court must be able to determine the scope of the proposed employment, the reason why it is necessary, how it may benefit the estate and the projected cost." *In re Computer*

15

*Learning Centers, Inc.,* 272 B.R. 897 (Bankr. E.D. Va. 2001). The Court may deny an application that lacks sufficient detail pursuant to Fed. R. Bankr. P. 2014 about the employment to conclude the representation serves the goals of the bankruptcy system. *See In re Bechuck*, 472 B.R. at 375-376.

Here, the Motion, yet again, lacks sufficient detail for the Court to exercise its discretion. The Motion states no specific facts showing the need for the employment and the reasons for selecting Mr. Wohlford over other attorneys. Doc. 266 at 1-3. The Motion contains a naked conclusory assertion that the employment of the Firm "would be in the best interest of the bankruptcy estate." *Id.* at 3. Similarly, the Motion, yet again, does not contain any information regarding the reasons for selecting the Firm over other attorneys and firms. *See* Doc. 266 at 1-3. Debtor's conclusory assertions in the Motion are not "specific facts showing" a need for the employment or reasons for Mr. Wohlford's selection. Therefore, the Court does not have sufficient detail to exercise its discretion consistent with the goals of the bankruptcy system.

Moreover, the conclusory assertions in the Motion do not provide any information that would allow the court to evaluate the merits of the claims, the potential value of the claim, or the projected costs to bring the claim. Simply stating Mr. Wohlford's hourly rate and the rates of other attorneys and staff at his firm does not provide any indication as to the projected costs of pursuing the claims. Doc. 266 at 3. Stating Debtor has claims against certain parties for restitution and unjust enrichment, tortious interference with relationship or expectancy and for declaratory judgment do not provide any information regarding the potential value of the claims or the merits of them. *Id.* Thus, the Court cannot determine whether employing Mr. Wohlford to pursue the purported claims is reasonably necessary or will provide any benefit to the bankruptcy estate. Accordingly, the Motion should be denied.

16

**C.**     *The Motion Should be Denied Because the Proposed Claims Against the 1502 Entities and Nathan Broders Are Meritless.*

Although the Debtor has failed to provide any specific facts showing the need for Mr. Wohlford's employment or the factual basis for the Debtor's claims, based on the limited information available to FRT and what it anticipates Debtor's factual basis will be, the purported claims lack merit and are frivolous. The Debtor lacks a factual basis to state a claim for (1) unjust enrichment, (2) tortious interference with relationship or expectancy, and (3) declaratory judgment. Because the Debtor's proposed claims lack merit, the employment of Mr. Wohlford and his firm to pursue them will not benefit the estate. Accordingly, the Motion should be denied.

FRT spent considerable time discussing the lack of merit of the claims that Debtor proposes to employ the Firm to pursue and the importance of the merits of those claims to the Court's decision to allow the employment in the First Motion. Doc. 251 at 9-15. Moreover, FRT provided what it anticipated Debtor would claim was its factual basis for its claims. *Id*. at 10. Tellingly, the Debtor, in its revised Motion, did not provide any additional information regarding the factual basis of those purported claims or their merits. If the Debtor had a basis to state specific facts demonstrating its purported claims have merit, it would have set them forth in its Motion in compliance with Fed. R. Bankr. P. 2014. Debtor either chose not to comply with Fed. R. Bankr. P. 2014 or, more likely, there are no facts that demonstrate the purported claims have merit because they are meritless.

FRT anticipates that Debtor will allege that the 1502 Entities, whose principal is Nathan Broders, purchased a manufacturing facility leased by Debtor from its then-current landlord. *Proof of Claim* 13-1, Ex A at 5-10. Subsequently, the 1502 Entities sold the manufacturing facility and assigned the Debtor's lease to LNC. FRT anticipates Debtor will claim it would have purchased

17

the manufacturing facility itself instead of the 1502 Entities. *See* Doc. 249 at 1.

As set forth in the Objection in more detail, the purported unjust enrichment claim is meritless because the Debtor conferred no benefit upon the 1502 Entities, who acquired the Premises from a third party; the Debtor lacked the financial capacity to purchase the property itself, as evidenced by its substantial rent arrears, and thus, under those circumstances, the Debtor had no reasonable grounds to expect compensation from the 1502 Entities for its failure to pursue the purchase of the manufacturing facility. *See* Doc. 251 at 11-13; *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 259 Kan. 166, 910 P.2d 839 (1996); *Kalkowski v. Neb. Nat'l Trails Museum Found., Inc*., 290 Neb. 798, 862 N.W.2d 294 (2015); *see also Proof of Claim* 13-1. Likewise, as set forth in the Objection in more detail, the tortious interference claim fails because the Debtor cannot establish a "reasonably certain" expectancy of realizing a profit from a property it could not afford to purchase, a fact underscored by its inability to meet its basic lease obligations. *See* Doc. 251 at 13-14; *Meyer Land & Cattle Co. v. Lincoln Cnty. Conservation Dist.*, 29 Kan. App. 2d 746, 31 P.3d 970 (2001); *Thompson v. Johnson*, 299 Neb. 819, 910 N.W.2d 800 (2018). The request for a declaratory judgment, likely related to the assignability of the lease, is equally flawed, as the lease's assignment was valid under controlling Nebraska law, which permits assignment when a lease is silent on the matter. *See* Doc. 251 at 14-15; *Todd v. Bd. of Educ. Lands & Funds of Neb*., 154 Neb. 606, 48 N.W.2d 706 (1951). Based on the facts that FRT anticipates Debtor will allege, its claims are meritless. Therefore, the Motion should be denied because the employment of the Firm is not necessary to or beneficial for the bankruptcy estate.

18

## CONCLUSION

For the reasons set forth above, the Motion should be denied. *First*, the Firm is disqualified from employment under 11 U.S.C. § 327(a). The Firm holds an interest materially adverse to the estate and is not disinterested because Flying 4T, a substantial creditor owned by insider co-debtors, who the estate has unexplored potential claims against, is paying its compensation, including a $25,000.00 retainer and ongoing fees. Doc. 266 at 2. This arrangement creates an impermissible conflict of interest that undermines the integrity of the bankruptcy process. *Second*, the Debtor has failed to meet its burden to show the Firm's employment is necessary or beneficial to the estate. The proposed services are duplicative of those already performed by existing counsel, and the Debtor has again failed to provide any specific facts to demonstrate that its purported claims have merit or potential value. *Compare* Doc. 9 at 1-2 *with* Doc. 266 at 1-2. Accordingly, FRT respectfully requests that the Court deny the Motion in its entirety.

[*Remainder of Page Intentionally Left Blank*]

19

DATED this 20th day of January 2026.

FIRST RATE TRADING, LLC,


By: */s/ Nicholas Zluticky*
    Nicholas Zluticky (KS #23935)
    STINSON LLP
    1201 Walnut St., Suite 2900
    Kansas City, MO 64106
    (816) 691-3278
    Nicholas.Zluticky@stinson.com

    and

    Brian J. Koenig, NE#23807
    (admitted *pro hac vice*)
    KOLEY JESSEN P.C., L.L.O.
    1125 South 103rd Street, Suite 800
    Omaha, NE 68124
    (402) 390-9500
    (402) 390-9005 (fax)
    Brian.Koenig@koleyjessen.com

*Attorneys for First Rate Trading, LLC*

# CERTIFICATE OF SERVICE

On this 20th day of January 2026, I served notice of the foregoing Objection by electronically filing with the Clerk of the Bankruptcy Court, using the CM/ECF system, which sent notification of such filing to all CM/ECF participants.

*/s/ Nicholas Zluticky*
Counsel for First Rate Trading, LLC

21